Your Honors, I'd like to reserve seven minutes of time for rebuttal. Okay. Good morning. Could you please introduce yourself? Yes. I will, Your Honor. Your Honor, Your Honors, my name is Scott Neely, and I'm counsel for the Kelly TNA class and for Ms. Nag Farad individually. But I'm also speaking on behalf of the separate Jama class whose counsel is here, and I'll be addressing any questions about the Jama TNA class, which is material identical to the Kelly class, and also any questions about the much smaller group of individuals who had downward condition adjustment deductions. You're wearing a lot of hats here today. Well, and I hope I can handle all the hats, Your Honor. We're here on a de novo review of the granting of summary judgment purportedly on the failure of plaintiffs to demonstrate injury and the amount of damages. And as the district court said, no evidence was submitted on those points. And yet the record is manifest that plaintiffs demonstrated both injury and the amount of damages using the exact same records that State Farm used and the exact same figures from the same reports that State Farm used to pay the claim. Counsel, your problem is the Lara case. So why don't you discuss that? I will be happy to discuss it. And I think you're correct. I mean, every ruling that she issued was correct. Lara came out. And it's a difficult situation for a district court. Opinion comes out literally in the middle of briefing. Summary judgment was already submitted, okay? Lara comes out. Lara has what the district court said was some very broad language in it, okay? And looking at that broad language, the district court failed to recognize the very distinct and very different posture of the case and facts of the claims as said. And I'd like to emphasize, Your Honor, what the claim was in Lara. We have a situation in this case where we have a deduction for the TNA that is not allowed under any circumstances. It's not allowed. The district court said it was not allowed. The amount of the deduction that should have been taken off the reports is zero. She also held that the deduction that could be taken for downward condition because they had failed to take an appropriate deduction substantively was zero, okay? No deductions could be taken. I'm having a little trouble following what you just said. Okay. With respect to the negotiation reduction, I can well see the argument that Lara doesn't speak to that at all. But as to the condition reduction, Lara does speak. Okay. And I would agree that there is a distinction and the distinction is there's absolutely no mention whatsoever in the regulation of a deduction that can be taken for the TNA. That's just erroneous to say Lara has anything to do with it. But the condition argument being made in Lara was fundamentally different. And if you look at the Lara opinion, it's really important to understand the claim that was being made in that case. And I'm reading from page 1137, and the court describes what the plaintiff's theory was, what Steve Berman, who was the counsel in that case, what his theory. And it says, quote, plaintiff's theory of the case is that Liberty violates Washington's insurance regulations by not itemizing or explaining this downward condition adjustment, which makes it impossible to verify. So they were arguing that there was a regulatory process violation. They didn't attempt to argue, Your Honor, that the deduction amount should have been zero or that the deduction was improperly taken. They were just saying, we're not arguing about the deduction. You didn't disclose it. And then they sought to get the amount of the deduction, in essence, as a penalty. The difference in this case is it's a completely different valuation system. And what State Farm does and what the auto source system does is they go and look at the subject vehicle. Okay, they look at photos. Sometimes they look at the car, sometimes they just look at photos. And they say, oh, well, the tires look worn. Or, oh, there's this, or, oh, there's that. The regulation allows you to take a condition adjustment. And I want to make clear, the regulation only binds the insurer. Okay, 391 says the insurer shall. And 391 subsection 4B says the insurer shall take a deduction for condition if appropriate, and then this is the key words, indetermining comparability. Comparability with the vehicles used to value the loss. The testimony was unrebutted from the 30B6, from auto source and from State Farm. They had absolutely no evidence about the condition of the comparable vehicles. So there was no apples to apples comparison. Clearly, if they knew the condition of the comparable vehicle, and they knew the condition of the subject vehicle, they can take a deduction because it would be appropriate. But not having that information, they're not making a comparison, and it doesn't fit within the deduction that was taken. And so the district court, looking at that evidence and that theory, said, that's not allowed. And in fact, she even said that, the district court said that in the motion dismissing the case. Those rulings are not appealed. They are law of the case. There's no cross appeal on her finding that this deduction amount should have been zero. Counsel, one thing that I have trouble with, and my understanding of Lara, is that this court said, even if the condition deduction was calculated unlawfully, there's no dispute that some amount of a condition deduction would have been lawful. And unless the plaintiff can show that the amount deducted was more than what they would have been allowed to do lawfully, they can't show injury. So, I understand you're saying the condition deduction in this case had no basis, was not lawful. But presumably, some condition deduction would have been lawful under the regulations. And so I understand Lara to be saying, you have to show that the condition deduction that was actually made was more than what they could have legally deducted. Okay, and I want to just make clear, because we're dealing with 2% of the case here, this doesn't have anything to do with Kelly. We accepted the condition adjustment, and for the JAMA TNA class, that's there. The difference, Your Honor, is that the argument being made in Lara, which I read to you, they never said the deduction should have been zero. They never said what the deduction would have been. And presumably, a deduction, in fact, it was accepted as being okay, but it was not adequately disclosed, so the person couldn't verify it. So, is your argument that the deduction in JAMA's case should be zero because there's no lawful condition deduction that could have been made, or only because of the way they were calculating it was completely unlawful? Exactly, and I want to be clear about that. State Farm has an obligation to only take appropriate deductions. They didn't take an appropriate deduction. Now, had they come forward with evidence of what a different deduction would have been, then maybe they could have avoided a summary judgment against them. But they didn't come forward with it. But that's a different question than the obligation of the plaintiff to affirmatively establish damages. To me, your argument is proving a nit. Exactly. And the court is saying, separate and apart from whatever evidence State Farm put in or didn't put in, you have the obligation to establish your injury and your damages. Okay. And that's the part that, Laura, seems to be a death nail for you. Well, the problem, the difference in Laura in this case, was it in the Laura case, Your Honor, that amount might be correct because there was no substantive challenge. If so, you would have gotten your ACV. I don't know if that's true. Because the deduction was appropriate, in which case you're seeking strict liability. Here, if the amount is zero, and, Your Honor, to address what I think the distinction is, the layer of plaintiffs don't have to put forward an amount for condition adjustment. They, in putting forward an ACV that should have been paid, they don't have to make that adjustment because the regulation only applies to State Farm. They don't have to make the adjustment. State Farm does. State Farm made the adjustment. And when State Farm made the adjustment, they didn't do it correctly, so the amount was zero. But then the problem, then the issue, then, taking that amount, what was the damage, then? What was the difference between what they should have received from State Farm and what they actually received from State Farm? That's the missing part. No. But that evidence, Your Honor, with due respect, is in the record for everybody. There's a report. The report takes a deduction. If you use the value of that report and all the inputs of that report, it is an appropriate valuation to be used by the plaintiff. It is what our experts said was a but-for valuation that should have been paid. They didn't pay that but-for valuation because they took a deduction. The amount of the deduction is the difference in every single case between what they paid and what they should have paid. I mean, because the class was defined. But that's what they paid and what they should have paid is the proof that the plaintiff has to pay. And we put it on. We put it on for everybody. You can look at the reports. We put these screenshots in the record for every single person. Our expert looked at 1968 files, every single solitary one of them, the but-for valuation, what State Farm would have paid had they not taken the deduction, which was an advertised data comparison, which complies with Washington law, which is what State Farm does in the State of California, where they've been found you can't take a TNA deduction. They just pay with the advertised prices and the deductions. It's what they pay in California. It's what their own experts, Ms. Burke and Mr. Olson, the people who State Farm hires outside of litigation. They said, that's how we do it. That's how our experts said we do it. And that's what CC does. I'm a little bit confused because I think of it again, the negotiation class, I realize, is the bulk of your argument. We've thrown you off on the condition class. I don't want to go off on this for too long. But on the condition class, are you saying that the plaintiffs have evidence that in each case where the condition deduction was taken, not legally, but as a matter of fact, as a point of comparison between the comparator cars and the plaintiff's car, that an expert says the condition deduction should actually have been zero, or is your argument that it should be zero only based on the illegality of the method? It's the second. It's the second. So there's no evidence saying the condition should have, my car compared to these cars was a match, and therefore there should have been no deduction. There's no evidence to that. And that, Lara seems to be saying there has to be evidence of that. And that is an individualized inquiry. That could happen for an individual plaintiff in this case, but you can't do that on a class-wide basis. Unless you can show me that there's some way to determine that on a class-wide basis. But in Lara, the court never held, Judge Bryan never held in the Lara case that the deduction was zero, because he never found the deduction was disallowed. Because they didn't argue the deduction was disallowed. They argued it wasn't adequately done. Here we have a ruling from the district court on a motion to dismiss, and a rulings at class certification, which she repeats in her order eventually dismissing it, saying that the deduction was not allowed, the negative condition adjustment was not allowed, and therefore it should have been zero. I understand your argument. So that's why there wasn't proof, Your Honor, other than the amounts, because we already had rulings. So it's a question of factual versus legal. But clearly the ruling was a legal decision. And I do not believe that there's expert opinion, for example, of how the regulation  And I'd like to reserve my remaining time if there are no questions. All right. Thank you, counsel.  May it please the Court, Bradley Hamburger for State Farm. As the district court correctly recognized, this Court's decision, Lara, was fatal to the plaintiff's claims in this case. Why is it fatal to the negotiation reduction? It doesn't even speak to the negotiation reduction. I think the key point in Lara is that what matters under this structure is that actual cash value is the fair market value of the vehicle. Yeah. What does the negotiation deduction have to do with fair market value? Well, it has to do with fair market value because the way that the methodology here that they are adopting, they're taking State Farm's methodology and they're backing out the negotiation deduction. That's what they want to do because they claim it was illegal. It starts with, yes, Your Honor. The State Farm looks at what comparable cars are going for and all those kind of economic things. It looks at condition, and I think you've got perhaps a better argument than your adversary thinks on condition. But then they take a further deduction, as I understand it, just on the grounds that our tough negotiators would have gotten a better deal. It's not about the tough negotiators of State Farm. What it is is that the methodology starts with advertised prices. And we know that this is an industry where advertised prices are often not what buyers actually pay. But when there is evidence... You mean the used car salesman doesn't tell the total truth? Oh, my gosh. Yeah. I am so devastated to learn that. It's an industry that it's very common to haggle over prices. There are exceptions, though. There are no haggle dealers. And in the record, at ER 772 and 805, it's undisputed that under this methodology, there would not have been a negotiation adjustment when... Go back to what you were starting to tell me. Exactly how is the negotiation deduction calculated? It's calculated based on the start of advertised prices, and then they apply a discount based on the typical negotiation adjustment. The idea is to approximate what the actual sold prices would be, because the advertised prices are inflated. And so the problem is, what they want to do is, their methodology, the plaintiff's methodology, the district court recognizes this, they want to label this as an illegal deduction. They want to keep all other variables the same and subtract it out. So what you're left with, essentially, are advertised prices. And why does that matter? If the advertised prices were inflated, which... No, no, no. I'm still... Maybe this is my stupidity, as my wife would tell me. The... How do you determine the amount of the negotiation deduction? The algorithm is used, in other words. So it is determined based on our source has a database and lots of experience, and they make this determination. Pick up a number. Well, I don't think they make it up out of a hat, but it is based on their analysis of the market, sold prices. Well, no, no. That's what I'm trying to get at. The law says, the law of Washington, that you have to use the fair market value, yes? Correct. Okay. So one can see how you can look at what cars are going for and so forth to determine fair market value. I don't understand what they use, other than subjective guesswork, to determine what is the negotiation deduction. I think the important thing is to focus on what the plaintiffs model. Remember, they had the burden on summary judgment to put in evidence of... But could you answer that question? How do you derive that number? How does that number come into being? That number comes into being based on AutoSource's experience looking at, I believe, its sold prices, various other market research about what the actual value is. And then I think it's important they don't take it all the time. They don't take it when the comparable price of the vehicle is based on the sold price, because there's no inflation for an advertisement. They don't take it once in no time. I understand that. But in the ones where they do take it, is there a computer program that they run to come up with a number? Yes. My understanding is, yes. It's based on... This whole system is a pretty complex computer program. They're not just picking numbers out of the hat. They're looking at lots of data. But I want to get back to what I think is the real critical problem here, though. They want to... In our mind, we need to understand how it works before you can convince us as to why you should win. And so... But I think that... I mean, I think the best I can give you for how it works is that it is not just a number picked at random. It is something that is studied. It is based upon the reality. I might have a record site. There... Oh. SER191. Experian supplies some sold prices. So there is something there. That doesn't help us. But I think the more important point, though, I think, is that what they want to do is they want to take state firms' methodology, the autosource reports, which start with advertised price, and then go take a deduction based on something that I think we can all say is a matter of common sense, happens in the real world, that advertised prices for used cars are not often the prices that, at the end of the day, are paid. And they want to say, because... Not because there's something wrong with the no-gatiation adjustment. That's not their theory. Their theory isn't that this was illegal because they didn't do... It was just arbitrary or they didn't do enough homework about it. They say it's just not permitted under regulations. Right. And therefore, it's zero. That's an argument. That's a legal argument that the district court agreed with in deciding the motion to dismiss. The district court held that Washington state law does not permit any negotiation discount, which actually, then, is what distinguishes this case from Laird. Because they're saying under any circumstance, there's no factual circumstance under which, under Washington law, a negotiation discount can be deducted from actual cash value. That Washington law prescribes certain methodologies for determining actual cash value, and everything about the outer source methodology was lawful and consistent with Washington law, except for the negotiation deduction, which, putting aside the condition deduction, which just should have been zero, in all cases, as a matter of law. Right? That's what the district court decided. But the district court then went on to say, reading Lara, and focusing on the parts of Lara that say, the fact that you just call a deduction illegal, we're going to conclude deduction is illegal, does not mean that, if you take it away, that what you're left with is the fair market value. That's because you argued that they couldn't use the outer source reports as evidence of their actual cash value, but your own declarant from outer source says that their reports determine actual cash value, which is synonymous with fair market value. So they're saying everything about those reports is exactly what their own expert would have done, would have gotten some compables, would have done all this comparison, and the only thing that they object to is the illegal negotiation deduction. So why isn't that evidence of actual cash value for the purposes of this case? Because what they want to do is they want to pick and choose from the methodology. So what State Farm represented and what the outer source testimony showed was that if you go through the entire process, you start with advertised price, if it's not a no-haggle dealer, you will make a deduction to make sure that you're not having an inflated price. They don't want to go through that step. They want to get rid of that. Right. Because they're saying when the advertised price is permitted under Washington law without a deduction for negotiation. Well, that's not correct. I don't think... I mean, Washington regulation says you may use advertised prices to determine actual cash value. If you look at 391 and it's 2B Romanet 3, it says the actual cash value of two or more compromotor vehicles advertised for sale in the local media. So it doesn't say focus on the advertised price, use the advertised price. It's talking about vehicles, the advertisements are, they're vehicles that are being advertised, they're being publicly sold, but it's the actual cash value, which we know from Laura and from the other section in the regulation is the fair market value. The real problem here is that just like in the Laura, just like the Laura plaintiffs, they don't want to put in any evidence that the deduction actually is a bad deduction substantively, that it is a bad deduction because it is taking away from a correct number of the value, the fair market value, and taking away stuff. What they want to do is they, what they've done the whole case is just said, it's illegal, you back it out, we get the difference. What's wrong with that argument under, if Laura didn't address, if Washington law does not permit the negotiation deduction, what's wrong with that argument? What's wrong with that is the same reason that it's contrary to Laura, which assumed that the condition of judgment there was wholesale illegal. And I understand that there's a specific reference in the regulation to a condition of judgment. Theoretically you could have a condition of judgment. The Laura plaintiffs, I was counsel in Laura, they were saying it was completely illegal. They had the same exact damages model. All they said was what we need to establish is an illegal deduction, doesn't matter what kind of illegal deduction. Here it's a negotiation adjustment, there it was a condition adjustment. And they say the fact that illegality alone creates the injury. The difference, I think you are leading a difference here because in Laura, the condition adjustment under Washington state law is permitted. The question is how is it calculated? And in Laura, the whole point was even if they used an incorrect calculation method or an illegal calculation method, there's still theoretically some condition deduction that would have been permitted. And you have to show that their incorrect method leaded to an actually wrong result. Here there can be no correct result, at least under plaintiff's legal theory of the case. There is no negotiation deduction under their legal argument that could ever be greater than zero because it's just not permitted under Washington law. And I understand you disagree with that, but that seems to be what the district court already held. What is your best case authority under Washington law that would permit a negotiation deduction under this regulation? Is there a case that would allow it? I don't think that particular issue has been litigated. I think that the plain language of the regulation, I think, doesn't support their view. But Laura Assuming we were contrary to your arguments to decide that a negotiation deduction was illegal or that the district court properly held that it was illegal, then is there anything left to your argument? Because then the class would consist of those who received less than they would have received if no negotiation deduction had been made. What would be left with is you would have a valuation, a damage model, a theory of injury that is premised on advertised prices without any deduction, assuming without any evidence and the district court recognized this. If you, using your methodology, everything was right about your methodology in my hypo except for the negotiation deduction. So we just take out, it's a simple arithmetic thing, we subtract the negotiation deduction and what's left is the injury to anyone who got less than that when they were paid by the insurance company. But what they were entitled to get was fair market value and when you take the state farm, the autosource method, and just eliminate without any basis No, so if I understand what you're saying now, maybe I'm misunderstanding. You're saying if state farm has a methodology for calculating fair market value and we're going to introduce into that a weakness factor. This is not the case. We think that in 50% of the cases, the car owners are so weak that we can negotiate them down to half of what we otherwise would pay. Clearly illegal under Washington law in my view. So a court says you can't do that. We take that out. Why isn't what's left your own admission of what is the proper calculation of fair market value? Well, I think because what's left in this case and I think would be for any deduction would be an advertised price, which we have good reason to believe, uncontradicted that advertised prices are often inflated for haggling negotiation purposes and state farm never represented that that was the fair market value. And so the problem is it's the exact same situation in Lara, which is they want to do the exact same thing. They said it was easy arithmetic. You have an evaluation methodology. Just take out the deduction. The deduction is the injury. And the problem is that what the teaching of Lara is that what matters is what the actual value of the individual vehicles were. That's how you calculated it. You calculated it by putting in this typical negotiation amount, which Washington law says is illegal. So if if if it is illegal, then how would you if you were to go back knowing that now the court says this tactic is illegal, how would you calculate the actual cash value? Well, I don't think they would use advertised prices without a reduction because that would be an inflated value. Well, what will you use? Our argument is that you have to use advertised places without a negotiated deduction under Washington law. Well, that's not true. Actual cash value isn't a number that you can just look up. It's a number that you have to use a certain method to come up with. And plaintiff's whole legal argument is that Washington law prescribes certain methods and that under the methods permitted by Washington law, a deduction for negotiation is just not permitted, which is exactly what is to say that some some deduction from the advertised price for negotiation is not permitted under Washington law. If they're right about that, what what is wrong with them pointing to everything about the autosource methodology and saying that's exactly what we would do, what we say is permitted under Washington law to calculate actual cash value so long as you back out the negotiation discount. But everything you just said was exactly what was put forward by the plaintiffs in Laura. And I understand that in Laura, the it was a different deduction, but the argument was exactly the same, that this what they were doing, the methodology was completely illegal. And the court in Laura. But it's not illegal. Well, yes, but the plaintiff, it says on and Laura, it says. Condition adjustment is not illegal. Condition adjustment is not illegal. Well, the difference. They did it, I'm sorry. Yeah, I understand the court's concern. I think if you read Laura, what Laura is saying is. We've read Laura. Oh, I'm sure you have, but it's a unique, unique appeal, which turns on a very recent decision of this court. But the problem is, is that if you just focus on deducting amounts or identifying injury based on a violation of the law without actually looking at the reality, that's the teaching of Laura, which is the fair market value has value. And what they're left with here is they're left with just advertised prices. And so it's permissible, perhaps it was the intent of the regulation. If there is a total loss that in the absence of any other deduction that's allowed under the regulation, that's the price State Farm has to pay. Absent showing that the total loss does not equate to that, you know, there's nothing and nothing. The regulation says you have to use advertised prices. Well, you don't have to, but it's permissible. Well, I don't even know if it's permissible. It says you have to get the actual cash value of advertised vehicles. But the real problem here is that we're talking about an injury in law. We get the actual cash value if we don't look at the price, advertised price. They do look at they start there. They start the advertised price. We're not saying the advertised prices aren't something you could start with. If an advertised price comes from a no haggle dealership, that could be the start in the end. Exactly. But that's not what we're talking about. We're talking about dealers that are not no haggle dealers. Here's the problem with your argument. Yes, Your Honor. You want to deduct from the advertised price with a with an item that's not permitted under Washington law. That's the problem. That's the difference, in my view, between this case and the conditions, because you can deduct for conditions. The way they did it was not permissible. But the regulation doesn't allow you to have this typical negotiating amount as a deduction, period. That's the difficulty I'm having with your argument. Two responses. One, I don't think that's a correct reading of the regulation. I do think that you... Well, what if we disagree? We get to decide. Even if you are, what you're left with is, and the key question here is injury. Remember? And the key question is injury. And so they're going to say they are injured, not because there was something wrong with the negotiation adjustment as a substantive matter, but as only because of the matter of law. So what they've most have proven is a deviation from the regulations, a violation of law. And if Laura says anything, I think it's pretty clear that it says a violation of a regulation is not enough. Laura expressly says that the plaintiffs resort to calling the deduction illegal. They didn't say any type of deduction. And they said that's not enough. They called the condition adjustment illegal. And the condition adjustment is not per se illegal. The methodology used was illegal. We're trying to make sense of, you know, how your argument flows with Laura. And to me, I don't think Laura says if the deduction is not allowed, period, you still have to permit it to be considered. I would recommend to the court. I've talked to state counsel. If State Farm and the auto source had just said, we're going to do this entire methodology that we use to determine actual cash value, and then we're just going to deduct a $500 fee. And Washington law says you're not allowed to just deduct a $500 fee. Why wouldn't everything about the methodology then be determinative of actual cash value? And all you would have to do is back out the $500 fee to determine damages and injury. Well, I think that the problem would be is you wouldn't have evidence that the ultimate amount that was paid actually was lower than fair market value. And on the facts here, on the facts here. You're making it seem like there's some number of a fair market value that's determined other than by the method. That auto source used a method that is permitted and prescribed under Washington law. And the only thing plaintiffs are saying was wrong with that method under Washington law was the negotiation deduction. But otherwise, they would have used the same exact method. And they're allowed to use that evidence of that method to show actual cash value. Yeah, but Laura was very clear about making a distinction between a regulatory violation. I know you're going to say it's condition adjustment, but in many of the statements, almost all the statements, there's no discussion of condition adjustment. You're going back to how you read, Laura. Is that right? And if we read, Laura, differently, do you have any other argument? Yes, because I think that then at that point, if you disagree with my reading, Laura, and you're saying that all that matters is that this was completely not permitted. I think two things flow from that. One, I think you should look at what is left if you take away that negotiation deduction. You're left with full freight advertised prices based on an assumption that's not supported by the record that full freight advertised prices are the right value. But then secondly, and the district court also made a finding under Article 3 standing, I think it was maybe superfluous, but maybe not. But what you're talking about is Washington maybe has created a system whereby it doesn't matter if the insured got full market value or maybe above full market value because under their system, they're going to give people back the negotiation adjustment. They could get windfalls above advertised prices or at advertised prices, full freight. And so that's, I think, creates serious Article 3 concerns. The transunion case talks about injuries in law are not enough. You need injuries in fact. And so I don't think that's Washington law. I don't think I think that's the teaching of Laura. But if that's your reading of Laura, I think we have a problem. Counsel, what if what if Washington law said literally to calculate actual cash value, you must add A plus B plus C and you can't subtract D. Right. Plaintiff's going to be saying that's exactly what oversimplifying you. But Washington law says you have to add A plus B plus C and you can't subtract D. They subtracted D. Therefore. To determine what we should have gotten to, all you have to do is add A plus B plus C under Washington law to determine what we should have, how much money we should have gotten. Yeah. And I think if we agreed with that, why isn't that a calculation of injury and damages? Because I think the problem is, is that what Washington law demands of an insurer is not to just follow a procedure and what these insured are entitled to is not just a proper procedure. Otherwise, Laura would not come out with how it did what it requires is a payment of fair market value. And so what they want to get is they want to get full freight advertised prices, no reduction for any reality. I mean, this would be different. That's not true because the condition adjustment is still on the table. Correct. Yes. For part of the class, there's condition adjustment. I'm talking just about the I understand the court has a concern about the negotiation, but I'm trying to explain how the negotiation would leave them with a windfall potentially. Exactly the exact same way. And look, they could have solved this problem in a lot of ways. On the other hand, it leaves State Farm with the windfall if the negotiation adjustment is not legitimate. Well, we think that there is good reason that it's legitimate, but also they didn't put any evidence in the record to say suggests that the proper measure of damage as a reality in reality is that the advertisements just pay the advertisements. If they had, you know, they could have done this. They could have said, look, dealers don't ever, you know, young people today don't want to negotiate. They could have said something like that. They could have said, we've actually looked at the advertisements, the advertised prices in the record here. We call those dealers and they say, yeah, we actually we never sell less than our advertised price. It's a hot market for used cars. But if Washington law does not allow that, why would they have to put that evidence in the record? If the regulation says, you know, if we read the regulation to say that's not one of the deductions that can be made. Why would they have to put that evidence in in order to prove damages? Yes. If we if we if if you agree, if we if we decide that the Washington law does not allow that typical negotiation adjustment, what evidence then would the plaintiffs have had to put in the record to prove actual fair market value? Yeah. So and I'm glad you ended on fair market value there, because that is actually what Washington law requires. It has two things, right? It requires to give actual cash value, which equates to fair market value, which the case law says is what a willing buyer and a willing seller will basically agree on if they're fully informed. So what what the problem here is, is that. So my question was, what evidence would the plaintiffs have had to put in? Yeah, so there's plenty of ways. Yeah. So to get to that question, they could have done a lot of different things that they could have had an appraiser said, this is what we think the cars are worth. They could have had if they wanted to just use our methodology, the autosource methodology, they could have had somebody come in an expert. They had three experts. They could have an expert come in and say, you know, advertise prices are what matters nowadays. They didn't do that. They could they could have come in to say advertise prices are what matters these days. If we agreed with the district court, and I don't think this ruling is actually an appeal, but if the district court held that Washington law does not permit a negotiation discount from advertised prices, why do they need an expert to say advertise prices are what factually matter when the law says we don't care? You can't take a negotiation discount because the law that they're pointing to and a lot that the district court pointed to was the procedures that were supposed to be followed in settlement of claims. So you're disagreeing with the legal ruling, but let's say I don't know. I'm not, Your Honor. But if you have, let's say, concede that pretend that you concede Washington law does not permit a negotiation discount from advertised price, then what? I think that's what Judge Rollins is. So and I'm happy to be there. And so I'll concede it's completely illegal. You can never take a negotiation adjustment. What you're left with is, because this is how they chose to do it, and they chose to do this for a reason, because it's easy and they want to have a class, they chose not to come in with the fair, the alternative fair market value to show how they were shorted. What is the alternative fair market value? Like an appraisal? Very individualized appraisal would be an appraisal. I think they also could have. They could have actually done what they potentially could have done what they wanted to do, which is they wanted to use part of state farms methodology. Why isn't there sort of a tortfeasor problem with your argument? You're saying that if a company otherwise correctly calculates fair market value, but chooses to reduce it illegally, that the burden then shifts to the other side to show what the fair market value should have been using some other methodology. Why isn't it more traditional tort law to say, you blew it, you calculated fair market value and you used factors A, B, C, but C was illegal, so you're stuck with using A and B. Yeah. So I think Laura speaks to that, and it speaks to that in that it says that it's not enough to just prove a regulatory violation. You also, the underlying causes of action here, which are breach of contract, Consumer Protection Act claims, have also a requirement to show injury, to show harm. And people could have been paid with a wrong methodology, but got in more than the fair market value. Counsel, there's a difference between a regulatory violation and an illegality. Well, the only, the only illegal, only accusations of illegality here were violations of the procedures under the Washington regulations for the settlement of these sorts of claims. There's no statute. It's all regulatory. I see a distinction between what you can do under the regulation, but you did it wrong, and what you can't do under the regulation. So to me, those are two different scenarios. If there is a violation in the way you implemented what is permissible under the regulation. I see that as a law situation, but if you put something in that's totally precluded by the regulation, to me, that's a different scenario. You don't see those as different? I don't, mainly because, and I know you've read Laura many, many times, but it talks about, it takes on this argument, I think, pretty directly when it says, deals with the argument from the plaintiffs, labeling an adjustment as illegal completely. And if you go back to the briefs from Laura, and they're in the record, actually, that is what the plaintiffs were saying. They weren't saying the problem here is the condition adjustment was overstated. They were saying, you cannot take a condition adjustment of this sort at all. It was a big condition adjustment. They didn't want it at all, and that's what they want to do here, and they're just changing the name of the adjustment. I'll read, Laura, one more time. Yeah, I know. Thank you, Your Honor, because I do think it's just positive, this case, and I think, and I know I'm way over my time. I thank you for your indulgence. I think this is very important, the recent panel decision from this Court that I think squarely controls. The district court who lived with this case made a lot of rulings against my client, read Laura. Read Laura, I think, exactly right, and this isn't saying this slams the door shut to these kind of claims. What it does is it makes the plaintiffs, I think, have to do more to establish the actual fair market value than just taking our methodology and saying, I found something illegal. Let's cross it out. Let's X it out and give everybody that amount, because some people will get more than they should, especially if you use, under the scenario here, what you're going to be left with, if you adopt their damages model, you say that's sufficient to show injury, you're going to be left with full freight advertised prices. That's not reality. That's not actual injury. I don't believe it's injury under Washington law. I think it's definitely not injury under Article 3, under the TransUnion case. So, thank you. This is a difficult case, because, you know, most people, when they get a car totaled, feel like they've been shorted by the insurance company, because they're almost never able to get a new car with what the insurance company gives them. So, it's a real dilemma, and we want to be sure we get it right for both sides. I understand, Your Honor. I do thank you for your indulgence in letting me speak at length. All right. Thank you, counsel. Thank you to both counsel. The case just argued is... Oh, he gets her. Oh, oh, oh, sorry. After that length, you may not want to hear from me. We went over so long. We went over so long. I thought, surely we're done. What did you do there? So, I have a question for you. Yes, Your Honor. So, what do you say to the argument being made by the other side, that even though Laura dealt with a condition that might have been argued to have been misapplied, that wasn't the argument of the plaintiffs there. The argument was that it was totally illegal, and therefore, it should just be wiped out. And so, when that was rejected by the Ninth Circuit, says your opponent, the same thing should apply to the negotiation reduction. Because what was being rejected by implication in Laura, according to his reading of Laura, was not simply that the condition adjustment was misapplied, but rather that it should not have been allowed at all. It was regulatory illegal. And they say that's the same argument you're using here. I'd have two responses. First of all, that's not how the Laura court describes the facts that they decide the case on. And they specifically go on from their discussion of a regulatory process violation by saying you might have gotten this deduction for condition taken and still having gotten the ACV. By that, they're meaning that it might have been a correct deduction, because there was not. So, the appellate court didn't decide the question that he's arguing was there. I don't know what they argued below. I'm not Steve Berman. That wasn't my case. But I can tell you that the appellate court in Laura very carefully describes the argument that they're addressing. They describe the facts that you could have somebody who might have gotten ACV with the deduction. Here, we have findings from the district court, both as to the condition adjustment, but specifically, which I recognize is entirely not allowed because it's not mentioned, for the TNA adjustment. That was decided three, twice, at motions to dismiss on class certification. That has not been cross-appealed. I would say respectfully, to the extent that there's any question whether those rulings — first of all, I don't think it's before you, but if you had any question, that's a fundamental question in Washington law. That's the kind of question that should be certified. And that kind of rolls into the entire argument he's made. We've had a shift in this case. You know, and this gets to your argument about how was the TNA done, okay? We don't argue. We decide. Anyway, Your Honor, I misspeak. But to your question, Your Honor, about how the TNA — and I thought about briefing that. We had enormous amounts of evidence. I took Neil Lowell, who was the representative from AutoSource. I took State Farm. We know how the deduction was taken. There's a lot of evidence in the record. But that wasn't an issue because they never challenged the finding that it was categorically not allowed. But to answer your question, the deductions complete junk. What they do is they have a one-page chart. You pull it up. It's in Volume 9, page 10 — 1822. They got data from the entire region, okay, Washington, some from Oregon. They got it from the DMV. They got what they thought was the price that was advertised, and they got the tax price. Now, I pointed out in a deposition taken before this case, in a case called Steyer, the Washington Court of Appeals addressed Steyer. The judge in Steyer said — state court judge in Pierce County said you couldn't take the deduction. They took a writ to Division 2 of the Washington Court of Appeals, which was turned down, saying that there was nothing wrong with the rulings. But in that case, I said, well, look, you can't use tax data because they're reporting what you paid. And in the state of Washington, when you report what you paid, it's the cash price, not the trade-in. So if you have a car that had a list price of $16,000 and you report $15,000 to the state, that doesn't mean they took $5,000 off. You might have a trade-in. And they actually went, oh, well, maybe you're right. And Neil Lowell said, by the time we got to this case, when I redeposed Neil Lowell, he said, we're no longer using data from Washington because we can't verify that that data in the deduction is accurate. But it's also wrong because they — this is not specific to vehicle. They basically said it doesn't matter whether you have a convertible in Washington state in the summer or a convertible in Washington state in December. You're still going to have the same deduction. But that's all a challenge to the methodology. Exactly. Exactly. But that isn't good for you, Steve, because then you're talking about individual questions and not what the cars are. Well, no, no. But — but — but — let me — here's the language that's problematic in law for you, in my opinion. Okay. I have a paragraph on page 11 — I mean, page 1140, the final paragraph of Section 1. It says — Final in Section 1? Yes. Yes. It says, plaintiffs finally resort to calling defendants' adjustments illegal. Uh-huh. But that's an argument for the Washington Insurance Commissioner — Yeah. — not for us to make that decision. So that's the problem with my accepting your argument that's illegal. In law, we said it doesn't matter whether they call it illegal or not. The issue is they still have the obligation to show damages. So to me, that militates against finding in your favor — And let me say what the difference is. The Court has described the facts and the claims very carefully on page 1137 that they're addressing. Uh-huh. They specifically say plaintiff's theory of the case — and I'm quoting — plaintiff's theory of the case is that Liberty violates Washington's insurance regulations by not Same argument. No. No. They're violating the regulation by — By — Including the negotiation adjustment. Wait a second. That's the same argument. It is not, Your Honor, with due respect. The reason why is that, one, they're saying that it wasn't adequately disclosed. Because it wasn't adequately disclosed and explained, even if it is correct, you can't take it and you get the amount of the deduction, which they found was strict liability. That's not our case. Bottom line, bottom line, lowercase, the lower panel said the fact that you're calling something illegal does not excuse you from your obligation to show actual cash value. And if all I was saying — if I was making the same claim, if I was saying that you're allowed to take a T&A deduction, if the Court had said you're allowed to take a T&A deduction, but it's not adequately disclosed — But that's not what Laura — Laura did not caveat. Laura did not make a caveat to its statement that the finding that it's — the charge that it's illegal is an argument for the Washington insurance commissioner, but it does not excuse the plaintiffs from making their injury showing. Okay. That's the problem you have with Laura, in my view. And I would agree, Your Honor, that if the theory — if the condition adjustment was not different here and we didn't have a finding, it would be a problem as the condition adjustment. But there's a big difference between an adjustment that's listed as permissible and you're arguing wasn't adequately disclosed, as in Laura, and a deduction which isn't allowed at all. And if there's any question — But that's illegal. That's another way of saying it's illegal. That's the problem. But every — but wait a second, Your Honor. Every deduction that isn't permitted, everything you take off, the $500 you took off — Right. Maybe they have a beer fund deduction that they take off. I get it. It would be illegal. But Laura says that doesn't matter, that is, that you call it illegal does not change the responsibility. We gave them a hard time and you were smiling when we gave them a hard time. And I recognize that, Your Honor. But the terminology, whether I call it illegal or it's unpermitted and not allowed or disallowed, that's sort of semantic. The question is what argument is, what does the regulation allow, which is a question of Washington law. Well, no. We have to follow our precedent. Okay? So you might not — we have to follow our precedent. And if our precedent says — could I finish? I'm done. But if my precedent — if our precedent says you're calling it illegal does not change the obligation for the plaintiffs to put forth evidence of injury, then how do we get — how do we get around that language? Because we're not simply calling it illegal, Your Honor. We've demonstrated that it's not allowed under the regulation in any circumstances and therefore as the district court found, and they've not cross-appealed those rulings, the amount of the deduction should have been zero. That's another way of saying it's illegal to me. Maybe my colleagues don't agree. Okay. Well, Lara — Counsel, is it fair to say that your argument is that you've not just shown illegality, but you've also shown injury, which was the missing element in Lara? Yes. Yes. How did you — how did you show injury? Because we provided what you should have been paid, a regulatory-compliant 391 valuation, which by the way is the same valuation using the same information State Farm had. It's the same way they pay claims in California, exact same way. He said it's — oh, you can't use advertised prices. It's what they do in California. It's what CCC does. They use advertised prices. They don't wax them an artificial number off of them. It's what their own appraisers, Ms. Burke and Mr. Olson, did. It's what our appraiser, Mr. Harbor, testified you did. But isn't that the same — isn't the same thing true for a condition, for the condition? Every time — Deduction? All Lara says is you have to show what you should have been paid and what you were not paid as a matter of but-for causation. And to the extent that you couldn't do it that way, that's an evidentiary question. And the State of Washington was justifiably — the insurance commissioner and the State Attorney General has filed a notice of joinder stating that, quote, whether the expansion of the decision in Lara v. First National — the State reads this as an expansion, okay — is contrary to Washington law concerning the burden policyholders must meet when there is an alleged violation of 391. And then it says, as the chief insurance regulator for the State of Washington, the insurance commissioner has serious concerns about the possibility of adding evidentiary requirements that may effectively bar legitimate claims of statutory violations brought by Washington residents. The entire argument that he tried to make in response to your question, what do we do if it's illegal, was to impose some evidentiary requirements. That's a question of Washington law. And the State and the insurance commissioner, this is a regulation to see people get paid quickly and fairly given the circumstances. Always change the regulation. If they think the lower court panel impermissibly expanded on the regulation, all they have to do is change the regulation to make it clear what's permissible and what's not permissible. I don't think, Laura — I don't think that's what Laura held, but I'm not sure that they could do the regulation by saying it's not illegal as defined in Lara and it's in fact an unauthorized order. We oftentimes get statutes or regulations that are adjusted in light of decisions that are made by the court. I, with apologies, would like to get in a question here. You may. Thank you. Wasn't the actual holding of Lara that it was not an abuse of discretion for the district court to find that because of the complicated nature of the conditional deduction that when that deduction was an issue, individual damages outweighed commonality and predominance? I think that's exactly so. And we argued that pretty extensively. And it's on page 1140 of the Lara opinion. And it's in a very important distinction because the question in Lara was as a matter of class certification, has the district court appropriately found you have to have individual proceedings such that manageability isn't shown? We're at the stage of whether our summary judgment evidence should have been accepted. Okay? And Laura says under the heading third on 1140 — and his argument is you can't use any of this as evidence. And the district court implicitly said we couldn't use the evidence we put forward because it was from the defendant's files. We needed something extra or different. But what Lara actually says is really important. Third, plaintiffs say that even if proof of individual injuries is required, the amount of the deduction would still be relevant evidence in that inquiry. And the court says that's true. So they find the evidence we put forward is evidence. It's admissible. It's relevant. But then, to your point, Your Honor, they said, but it's also beside the point. Some relevant evidence could be in common, but some of it wouldn't be. And that's why the district court didn't abuse its discretion in finding that individual questions predominate. So they're again finding that the way the evidence was sought to be used in Laura because you could take a condition adjustment, because they included people who weren't paid based upon the reports or paid something different, and because they included no argument, at least as far as the Laura court said, that the deduction was categorically not allowed because of the way it was being done. They — Laura took it that you could take this deduction. Then you had to determine what it was to determine ACV. But that isn't our case. I don't know if Laura said all that, but could you wind up? Because we're way over time. I think that we're way over, Your Honor. I think that this case can be disposed of by the district court's rulings, which were not appealed. If there are any questions about those rulings that the deductions were illegal, I think that's something the Washington Supreme Court should address in the first instance. And I think that the further argument about evidence-sharing rules is very dangerous, and that should go to the Washington State Supreme Court. All right. Thank you, counsel. Thank you very much. Thank you to both counsel for your helpful arguments. Just a yes or no question to State Farm. Would you object to certification to the Washington Supreme Court? We have objected. We think Laura disposes of the appeal, but if — you know, the court, you know, obviously has discretion to certify collection. We don't think it's necessary for it to be stated in our opposition. All right. Thank you, counsel. Thank you to both counsel. The final case on calendar, Community Action Resource Enterprises v. Vilsack, has been submitted on the briefs. That completes our calendar for today. We are on recess until 9.30 a.m. tomorrow morning. All rise. The court for this session stands adjourned until tomorrow. Thank you.
judges: RAWLINSON, SUNG, Rakoff